```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
MAURICIO ORBETTA et al.,                                               :
                                                                       :
                              Plaintiffs,                              :
                                                                       :         20 Civ. 9000 (JPC)
              -v-                                                      :
                                                                       :         OPINION AND ORDER
DAIRYLAND USA CORPORATION and THE CHEF'S                               :
WAREHOUSE, INC.,                                                       :
                                                                       :
                              Defendants.                              :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

In this wage-and-hour employment case, one of Plaintiffs' attorneys, Jordan El-Hag, also led Plaintiffs' union's collective bargaining negotiations with Defendants Dairyland USA Corporation and The Chef's Warehouse, Inc. Plaintiffs have sued Defendants under federal and state employment law, arguing that they were paid insufficient wages. Defendants move for El-Hag's disqualification as counsel, arguing that El-Hag's role in negotiating the agreements, which set those wages, renders him a necessary witness at trial on the issue of whether any violations were willful. Because those negotiations seem to be of marginal relevance to willfulness, other witnesses can testify on the same facts to the extent admissible, and Defendants have not shown a likelihood of prejudice, their motion to disqualify El-Hag as counsel is denied.

## I. Background

Plaintiff Mauricio Orbetta alleges that he formerly worked as a delivery driver for Defendants. Dkt. 68 ("Complaint") ¶¶ 38-39. On October 27, 2020, he commenced this suit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and a class action under the New York Labor Law ("NYLL"). Dkt. 1 ¶ 2. Fifty-two other plaintiffs, also delivery drivers, have since joined the case. Dkts. 6-40, 43-45, 48-61. On February 2, 2021,

Plaintiffs filed an amended complaint, asserting six causes of action that allege failure to pay the minimum wage in violation of the FLSA and the NYLL, failure to pay overtime wages in violation of the FLSA and the NYLL, and failure to provide required pay notices under sections 195(1) and 195(3) of the NYLL.  Complaint ¶¶ 86-116.  Because the Complaint alleges that Defendants' violations of the FLSA were willful, Plaintiffs contend that the statute of limitations applicable under the FLSA is three years, rather than the usual two.  *Id.* ¶¶ 93, 106 (citing 29 U.S.C. § 255).

The International Brotherhood of Electrical Workers Local 1430 (the "Union") represented Plaintiffs as the exclusive collective bargaining agent in their dealings with Defendants.  Dkt. 93 ("El-Hag Decl.") ¶ 5.  The Union has represented Defendants' delivery drivers since September 30, 2013, and negotiations between the Union and Defendants have culminated in a series of written collective bargaining agreements.  *Id.*  The first collective bargaining agreement was negotiated in August 2014 with a three-year term, the second was renegotiated for another three-year term to extend through August 2020, and the current version was negotiated in August 2020 and has a five-year term.  *Id.*

El-Hag, who is lead counsel for Plaintiffs, serves as the chief officer and legal counsel of the Union.  *Id.* ¶¶ 2, 6.  Both the Union and Defendants were represented by bargaining committees in their collective bargaining negotiations.  *Id.* ¶¶ 7-8.  El-Hag, a member of the Union's bargaining committee, *id.* ¶ 8, "act[s] as the chief negotiator of almost all the contracts to which the Union is a party," *id.* ¶ 6.  Although El-Hag served as the Union's chief negotiator in the negotiations with Defendants, he was not its sole representative.  *Id.*  Other members of the Union's bargaining committee included the Union's President, Vice President, business agent, and shop stewards.  *Id.* ¶ 8.

El-Hag attests that he has no firsthand knowledge of Defendants' decision-making related to the collective bargaining agreements or compliance with the FLSA and the NYLL.  *Id.* ¶¶ 11,

2

13. But Patricia Lecouras, the Chief Human Resources Officer of The Chef's Warehouse, attests that during the 2020 negotiations, Defendants and the Union agreed that Plaintiffs were properly classified as exempt employees under the FLSA and the NYLL. Dkt. 91 ("Lecouras Decl.") ¶¶ 6-7.

On July 6, 2021, Defendants moved to disqualify El-Hag as counsel for Plaintiffs. Dkts. 89, 90 ("Motion"). Plaintiffs opposed on July 14, 2021, Dkt. 92 ("Opposition"), and Defendants replied on August 3, 2021, Dkt. 97 ("Reply").

## II. Legal Standard

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation and quotation marks omitted). "Although . . . decisions on disqualification motions often benefit from guidance offered by . . . disciplinary rules, such rules merely provide guidance and not every violation . . . will necessarily lead to disqualification." *Id.* (citations omitted). "Disqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).

New York Rule of Professional Conduct 3.7(a) directs that "[a] lawyer shall not act as [an] advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y. R. Pro. Conduct § 3.7(a). "Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly . . . under the witness-advocate rule." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (citation and quotation marks omitted).

The witness-advocate rule distinguishes "between an attorney who will be called on behalf

3

of his client and an attorney who will be called" by another party. *Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 578 (S.D.N.Y. 2019).[1] If the attorney would be called by the attorney's client, the attorney must be disqualified when his testimony would be "significantly useful" to his client's case. *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). "This . . . requires a careful evaluation of the relevant issues in the case and of other available testimony." *MacArthur v. Bank of N.Y.*, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981). Merely cumulative testimony thus does not warrant disqualification. *See id.* at 1209.

If the attorney would be called by the opposing party, the attorney must be disqualified when "the testimony is both necessary and substantially likely to be prejudicial." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018) (citation omitted). "[N]ecessity takes into account . . . the significance of the matters, the weight of the testimony, and the availability of other evidence." *Id.* (citations omitted). So, for instance, the availability of an alternative witness is "essentially fatal to the necessity prong." *Id.* (quotations omitted). As for prejudice, "[t]he movant . . . bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice . . . is substantial." *Murray*, 583 F.3d at 178 (citation

---

[1] Before New York revised its Rules of Professional Conduct in 2009, the New York's professional conduct rules drew this distinction explicitly. *See Streichert v. Town of Chester, N.Y.*, No. 19 Civ. 7133 (KMK), 2021 WL 735475, at *16 n.12 (S.D.N.Y. Feb. 25, 2021). Under the former Rule 5-102, which preceded Rule 3.7, New York's disciplinary rules instructed, as relevant here, that: (1) if "a lawyer learns or it is obvious that he . . . ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial," and (2) if "a lawyer learns that or it is obvious that he . . . may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client." DR 5-102. Since the amendment, district courts have divided on the standard for disqualification in cases in which the attorney would testify for his own client. Some judges continue to require the movant only to make the pre-amendment showing that the testimony would be "significantly useful" to the attorney's client, while others require the movant to also show that the testimony would be necessary, which was previously only required when the attorney would testify for the opposition. *See Streichert*, 2021 WL 735475, at *16 n.12; *see also Rizzuto v. De Blasio*, No. 17 Civ. 7381 (ILG) (ST), 2019 WL 1433067, at *4 n.2 (E.D.N.Y. Mar. 29, 2019). The Court need not resolve that question because Defendants fall short of establishing that the testimony would be "significantly useful" to Plaintiffs.

omitted). Risks to avoid include the appearance that "the lawyer . . . vouch[es] for his own credibility," the difficult position of opposing counsel when required to "cross-examine . . . and attempt to impeach" an opposing attorney, the "fear that the testifying attorney is distorting the truth as a result of bias," and jury confusion due to "blur[ring]" of "the line between argument and evidence." *Id.* (citation omitted).

### III. Analysis

Defendants move to disqualify El-Hag, arguing that his representation violates the witness-advocate rule in two ways. First, El-Hag's testimony would be significantly useful to Plaintiffs because he negotiated the collective bargaining agreements. Dkt. 90 ("Motion") at 4-6. Second, El-Hag's testimony would be necessary to Defendants and prejudicial to his clients because he would confirm that, during collective bargaining negotiations, Defendants viewed Plaintiffs as exempt from certain FLSA provisions under 29 U.S.C. § 213(b)(1). *Id.* at 6-8.

Relevant to Defendants' motion is the concept of willfulness. "[A] cause of action arising out of a willful violation" of the FLSA has a three-year, rather than a two-year, statute of limitations. 29 U.S.C. § 255(a). A willful violation is one committed with knowledge of or reckless disregard for the statute's requirements. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). But "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (citation and quotation marks omitted). As noted, Plaintiffs seek to invoke this three-year statute of limitations provision by alleging that Defendants' FLSA violations were willful. Complaint ¶¶ 93, 106.

For reasons that follow, neither argument raised by Defendants warrants El-Hag's disqualification as counsel.

### A. If Called by Plaintiffs, El-Hag's Testimony Would Not Be Significantly Useful to Their Case

Defendants argue that El-Hag's testimony would help Plaintiffs because the Complaint's allegations are based on a payment scheme that El-Hag himself negotiated through collective bargaining. Motion at 5. Defendants reason that El-Hag's "framing and interpretation of those facts will be significantly useful to Plaintiffs, but his role as the lead negotiator of the CBA will cause any testimony he provides to blur the line between advocate and fact witness." *Id.* Defendants further posit that "[t]he circumstances surrounding the collective bargaining agreements are at the crux of Plaintiffs' allegations of unpaid overtime wages" and "El-Hag's testimony about the agreed to terms of the collective bargaining agreement is integral in determining whether Defendants willfully violated the FLSA as alleged." *Id.*

Plaintiffs have indicated no intention to call El-Hag as a witness to testify on the collective bargaining agreements or any other topic. On the contrary, Plaintiffs maintain that because no facts are in dispute over El-Hag's position with the Union or the terms of the collective bargaining agreements, "there is no need to call Attorney El-Hag to testify." Opposition at 9. Moreover, it is far from clear that the collective bargaining agreements will play any meaningful role in Plaintiffs' proof, let alone be "at the crux of Plaintiffs' allegations of unpaid overtime wages," as Defendants contend. Motion at 5. The Complaint neither references any of the collective bargaining agreements nor any of the negotiations that preceded their executions. *See generally* Complaint. Indeed, the agreements would not seem to be probative of whether Defendants violated the law. *See Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 133 (E.D.N.Y. 2011) ("Employees' rights to minimum wage and overtime pay under the FLSA are separate and distinct from employees' contractual rights arising out of an applicable collective bargaining agreement.").

Defendants' primary argument appears to be grounded in speculation that El-Hag's testimony as to the negotiations might support a finding of Defendants' willfulness. *See* Motion

6

at 5 ("Mr. El-Hag's testimony about the agreed to terms of the collective bargaining agreement is integral in determining whether Defendants willfully violated the FLSA as alleged."). But even putting aside that Plaintiffs' have not indicated that they plan to call El-Hag as a witness, Defendants have not even suggested what his testimony would entail, let alone whether it would be relevant and admissible. General speculation as to El-Hag's testimony is plainly insufficient. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 423 (S.D.N.Y. 2015) ("Speculation as to the testimony that counsel would give is not sufficient to support a motion to disqualify." (quotations omitted)). And to the extent that speculation is based on El-Hag's participation in the collective bargaining negotiations, as further discussed below, Defendants have not shown that El-Hag negotiated without the bargaining team at any relevant time or that he alone would have proof of their willfulness. *See* Lecouras Decl.; *cf. Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 791 (S.D.N.Y. 2015) (disqualifying an attorney who was "the only witness capable of testifying" on certain matters that were "specifically identified").

B. **El-Hag's Testimony Is Not Necessary to Defendants' Case or Substantially Likely To Be Prejudicial to Plaintiffs' Case**

For similar reasons, Defendants have not shown that El-Hag's testimony is either necessary to their case or likely to be prejudicial to Plaintiffs'. They appear to reason that, because El-Hag, as the lead negotiator, accepted the terms of the collective bargaining agreements, he agreed that Plaintiffs were exempt from the FLSA's overtime wage requirements. Motion at 6. Thus, according to Defendants, El-Hag's "testimony would concern the very basis of the instant case – whether Defendants' compensation policies willfully deprived Plaintiffs of overtime wages," and El-Hag would be "in the best position to establish that Plaintiffs . . . fully understood that they were exempt from overtime wages as required by the FLSA." *Id.*

This argument suffers from a few flaws. Initially, assuming that El-Hag's agreement to the collective bargaining agreements could be construed as suggesting the Union's understanding

7

that delivery drivers were exempt from the FLSA, it need not reflect that Plaintiffs themselves share that view.  Moreover, as for pure liability, whether a violation of the wage-and-hour laws occurred does not depend on the terms of the collective bargaining agreements, as discussed above. *See Polanco*, 819 F. Supp. 2d at 133.

With respect to the willfulness of any such violation, it is the state of mind of a defendant, not a plaintiff, that matters.  Any testimony from El-Hag would have limited probative value as to *Defendants'* states of mind regarding FLSA compliance.  His own view of the legality of the wage arrangement might be, at most, weak circumstantial evidence of Defendants' states of mind, and his impression of Defendants' views also would be of questionable value.

More importantly, other members of the Union's bargaining team, or Defendants' team for that matter, could substitute to provide the same or even more probative testimony of such impressions and of the agreements that Defendants and the Union reached.  While the Court is not ruling on the admissibility of such testimony at this point, the availability of a substitute witness—here, another attendee at the collective bargaining negotiations—is "essentially fatal" to a case for disqualification.  *Prout*, 316 F. Supp. 3d at 809.  In *Paretti v. Cavalier Label Co.*, 722 F. Supp. 985 (S.D.N.Y. 1989), for instance, a party to a breach-of-contract action sought to disqualify an attorney who negotiated the underlying contract, arguing that he should testify to a party's understanding of the deal, *id.* at 987.  Rejecting that argument, the court explained that if "a party made an admission at the . . . meetings," other participants could testify to it, rendering the attorney's testimony merely cumulative.  *Id.*; *see also id.* at 986 (distinguishing situations in which a lawyer is "the only witness capable of explaining what a clause means or why it appears," or otherwise "is the key witness at trial"); *In re Enron Corp.*, No. 01-16034 (AJG), 2005 WL 3873898, at *13 (Bankr. S.D.N.Y. Aug. 15, 2005) (declining to disqualify a law firm that was "not the only witness that can provide accounts of the [underlying] negotiations and discussions"

because other lawyers and businessmen were at the table).

And indeed, unlike El-Hag, Defendants' bargaining team could offer direct testimony based on personal knowledge as to their own states of mind.  In *Chapman Engineers, Inc. v. Natural Gas Sales Co., Inc.*, 766 F. Supp. 949 (D. Kan. 1991), for example, a party sought to disqualify an attorney who allegedly "negotiat[ed] and draft[ed] . . . critical documents" underlying the litigation, *id.* at 950.  While the movant argued that the attorney could corroborate the movant's own understanding of the deal in the negotiations, the court reasoned that the attorney would "be a . . . source for the same testimony that [the movant's] own witnesses will give," and would thus be cumulative.  *Id.* at 959.  As the movant failed to show that the attorney "would testify to events or representations made during the meetings that no one else . . . recalled," the court denied the motion.  *Id.* at 958 n.2.

For those same reasons—*i.e.*, the limited probative value of testimony from El-Hag and the availability of substitute witnesses—there also is no substantial likelihood of prejudice by permitting El-Hag to remain as counsel.  The Court is similarly unpersuaded by Defendants' contention Plaintiffs would be prejudiced because, "[i]f his testimony d[id] not confirm what is alleged in the Complaint, Plaintiffs' . . . claim[s] w[ould] be severely undermined."  Motion at 7.  Such speculation, which could apply in any case, fails to establish a "substantial" "likelihood of prejudice."  *Prout*, 316 F. Supp. 3d at 809.

### III. Conclusion

The Court therefore denies Defendants' motion to disqualify El-Hag as counsel for Plaintiffs, and respectfully directs the Clerk of Court to close the motion pending at Docket Number 89.

SO ORDERED.

Dated: January 14, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge