UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                             :

MAURICIO ORBETTA, DELROY HARRIOT, and    :
GOSNELL BUTLER, individually and on behalf of all  :
others similarly situated,                        :

                              Plaintiffs,    :          20 Civ. 9000 (JPC)

                                         :        <u>OPINION AND ORDER</u>

                    -v-                  :

                                         :

DAIRYLAND USA CORPORATION and THE CHEF'S :
WAREHOUSE, INC.,                        :

                            Defendants.    :

                                         :

---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs Mauricio Orbetta, Delroy Harriot, and Gosnell Butler bring this wage-and-hour action under federal and state law, seeking unpaid overtime compensation, unpaid minimum wage, statutory damages, and other relief from Dairyland USA Corporation ("Dairyland") and its parent company, The Chef's Warehouse, Inc. ("TCW") (together, "Defendants"). Thus far, fifty-two individuals have opted into this action pursuant to 29 U.S.C. § 216(b) in connection with Plaintiffs' overtime claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* Before the Court is Plaintiffs' motion for conditional collective action certification pursuant to the FLSA. For the following reasons, Plaintiffs' motion is granted in part.

## I.  Background

The Court assumes familiarity with the facts and procedural history of this case, which was set forth in the Court's Opinion and Order resolving the parties' cross motions for partial summary judgment, *Orbetta v. Dairyland USA Corp.*, No. 20 Civ. 9000 (JPC), 2023 WL 6386921, at *2-6 (S.D.N.Y. Sept. 30, 2023).  The Court briefly recites only those facts particularly relevant to the instant motion for conditional collective action certification.

Plaintiffs are current and former delivery drivers for Dairyland, a food distribution company that operates a warehouse located at 240 Food Center Drive in the Bronx (the "Warehouse").  *Id.* at *2.[1]  Three groups of delivery drivers work out of the Warehouse:

| Type of Driver's License | Type of Vehicle | Covered Area |
|---|---|---|
| Class-A commercial driver's license ("CDL A") | Tractor trailers | Long distance |
| Class-B commercial driver's license ("CDL B") | Refrigerated delivery trucks | Northeastern U.S. |
| Non-commercial driver's license ("Non-CDL") | Non-commercial delivery trucks | Local deliveries |

*Id.*  Claims brought by drivers in the second and third categories are at issue in this litigation.  *Id.* As particularly relevant to the pending motion, Count Three of the Amended Complaint alleges that Defendants violated the FLSA by failing to pay overtime wages to "all current and former food delivery drivers who performed work for [Dairyland] from [the Warehouse] in any workweek in the" three years prior to the filing of the Amended Complaint on February 2, 2021.  Dkt. 68 ("Am. Compl.") ¶¶ 14, 86-93.  In the Opinion and Order on partial summary judgment, the Court found that, with respect to Dairyland, the Motor Carrier Act ("MCA") exemption to the FLSA, 29 U.S.C. § 213(b)(1), applied as to ten Plaintiffs—meaning that Dairyland was not required to pay

---

[1]  TCW, a company which distributes specialty food products across the country, is Dairyland's corporate parent.  *Orbetta*, 2023 WL 6386921, at *2.

those employees overtime wages under the FLSA—but that genuine disputes of material fact existed as to the application of the MCA exemption to the other Plaintiffs.  *See Orbetta*, 2023 WL 6386921, at *9-16.  With respect to TCW, however, the Court denied Defendants' motion for partial summary judgment because of the absence of undisputed material facts allowing for the conclusion that TCW qualifies as a motor private carrier for purposes of the MCA.  *Id.* at *9.

In their motion for conditional collective action certification, Dkts. 157, 157-1 ("Motion"),[2] Plaintiffs seek permission to distribute notice of this lawsuit to all CDL B and Non-CDL drivers who worked out of the Warehouse and "to whom the Defendants did not pay overtime premiums to [sic] in accordance with the Fair Labor Standards Act and New York Labor Law; at any time between October 27, 2017 and the date of final judgment in this matter."  Motion at 1.[3]  On February 16, 2024, Defendants filed their opposition to Plaintiffs' motion, Dkts. 160 ("Opposition"), 161-164, and on March 10, 2024, Plaintiffs filed their reply, Dkt. 165 ("Reply").  On June 13, 2024, the Court issued an order scheduling oral argument on the motion and directing the parties to be prepared to discuss three issues, including "[t]he basis for Plaintiffs' contention [in their Motion] that the Court had ordered litigation be held in abeyance pending the parties conducting discovery on the Motor Carrier Act exemption to the FLSA, 29 U.S.C. § 213(b)(1)."  Dkt. 170 at 1.  The Court then heard argument on Plaintiffs' motion on June 20, 2024.  Dkt. 173 ("6/20/24 Tr.").

---

[2] Although Plaintiffs' moving brief is titled "Plaintiffs' Memorandum of Law in Support of Motion for *Class Certification* and Collective Action Notice," Motion at cover page (emphasis added), Plaintiffs make no arguments for class action certification under Federal Rule of Civil Procedure 23, *see generally id.*

[3] While the Amended Complaint also alleges that Defendants failed to pay minimum wage in violation of the FLSA, Am. Compl. ¶¶ 86-93, Plaintiffs do not make collective action allegations relating to the failure to pay minimum wage, *see id.* ¶¶ 67-73, nor do they move to include in the purported collective drivers who were not paid the minimum wage, *see generally* Motion.

## II.  Discussion

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover [damages] . . . may be maintained against any employer . . .
> by any one or more employees for and in behalf of himself or themselves and other
> employees similarly situated.  No employee shall be a party plaintiff to any such
> action unless he gives his consent in writing to become such a party and such
> consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  While the FLSA does not prescribe procedures for issuing notice of actions

brought collectively by individuals who are "similarly situated," courts interpret Section 216(b) as

granting authority to order notice informing potential plaintiffs of their ability to join any such

actions.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("[D]istrict courts

have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to

potential plaintiffs."); *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978)

(per curiam) ("Although one might read the [FLSA], by deliberate omission, as not providing for

notice . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C.

§ 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.").

Though orders authorizing notice are often referred to as orders "certifying" a collective action,

the FLSA does not contain a certification mechanism.  *See Myers v. Hertz Corp.*, 624 F.3d 537,

555 n.10 (2d Cir. 2010).

Accordingly, "certifying" a collective action amounts to a court exercising its authority "to

facilitate the sending of notice" to similarly situated individuals.  *Id.*  This step is the first part of

a two-step process that courts in this Circuit perform when deciding whether to approve a

collective action.  *Id.* at 555; *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir.

2020).  If a plaintiff passes the first step, the second step requires the district judge to,

> on a fuller record, determine whether a so-called collective action may go forward
> by determining whether the plaintiffs who have opted in are in fact similarly
> situated to the named plaintiffs.  The action may be de-certified if the record reveals

that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Myers*, 624 F.3d at 555 (internal quotation marks omitted).

A.      **Conditional Collective Action Certification**

1.      **The Similarly Situated Framework**

As just outlined, the Court initially determines whether to authorize the sending of notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to the alleged FLSA violation. *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 539 (2d Cir. 2015) (citing *Myers*, 624 F.3d at 555). Clearing this initial hurdle typically requires a "modest factual showing" that the current plaintiffs and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "In a FLSA exemption case, plaintiffs accomplish this by making some showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Id.* (internal quotation marks and alterations omitted).

In assessing whether a plaintiff has made the requisite showing, courts consider the pleadings as well as any affidavits submitted in support of the request to circulate notice. *See Almonte v. Marina Ice Cream Corp.*, No. 16 Civ. 660 (GBD), 2016 WL 7217258, at *1 (S.D.N.Y. Dec. 8, 2016). Although only a "modest" factual showing is required, a plaintiff's burden "cannot be satisfied simply by unsupported assertions." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). In addition, courts in this Circuit often apply a "modest plus standard" when "a conditional certification motion is made after some discovery has occurred." *Fernandez v. Pinnacle Grp. NY LLC*, No. 21 Civ. 10702 (AT), 2024 WL 2055059, at *3 (S.D.N.Y. May 7,

2024); *see also Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 481-82 (S.D.N.Y. 2016) (explaining the rationale for this standard); *Watterson v. RUI Mgmt. Servs., Inc.*, No. 20 Civ. 1783 (GRB) (JMW), 2022 WL 3867755, at *5-6 (E.D.N.Y. Aug. 30, 2022); *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 120 (E.D.N.Y. 2020); *Brown v. Barnes & Noble, Inc.*, No. 16 Civ. 7333 (RA) (KHP), 2018 WL 3105068, at *6-7 (S.D.N.Y. June 25, 2018) (applying the "modest plus" standard).  In applying this "modest plus" standard, a court "will look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding that the body of evidence is necessarily incomplete." *Korenblum*, 195 F. Supp. 3d at 482 (internal quotation marks omitted).  While a court "still will not decide the ultimate merits of the case or issues better suited for a decertification motion," the court will analyze whether "it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs'—in other words, that Plaintiffs have, through discovery, advanced the ball down the field." *Id.* (internal quotation marks omitted).

### 2.   Analysis

Initially, the Court agrees with Defendants that the "modest plus" standard applies to Plaintiffs' motion.  Plaintiffs have deposed a corporate representative for both Dairyland and TCW pursuant to Federal Rule of Civil Procedure 30(b)(6) and the parties have exchanged document productions and interrogatory responses.  *See* Motion, Exh. 10; Opposition at 7.  In responding to Defendants' argument that the heightened "modest plus" standard thus should apply, Plaintiffs stated in their reply brief that they "do not oppose one-step certification because the record establishes that the Defendants apply a uniform pay practice that unlawfully exempts the hundreds of putative class members from receiving proper wages."  Reply at 1.  This response appeared to conflate the "modest plus" standard with the second stage of the certification process.  *E.g.*, *id.* ("So, yes, the Plaintiffs also believe a final decision on collective certification is appropriate.").

At oral argument, however, Plaintiffs' counsel confirmed that Plaintiffs do not oppose application of the "modest plus" standard.  6/20/24 Tr. at 10:24-11:4.  Given that some discovery has taken place and in the absence of opposition from Plaintiffs, the Court applies the "modest plus" standard in considering the evidence submitted by the parties.

Plaintiffs seek to send notices to two classes of delivery drivers—CDL B and Non-CDL drivers—who operated out of the Warehouse "at any time between October 27, 2017 and the date of final judgment in this matter."  *See* Motion at 1.[4]  Plaintiffs argue that these potential opt-in delivery drivers are similarly situated to each other and to the named Plaintiffs because Dairyland exempts all delivery drivers from overtime pursuant to the MCA exemption, Motion at 4, 11-13, the drivers share the same primary job duties, and their terms of compensation are governed by the same collective bargaining agreements ("CBAs"), *id.* at 13-14.  Defendants make a number of arguments in response.  They first argue that they have paid their drivers in accordance with the operative CBA and therefore have not violated the FLSA.  Opposition at 10.  Defendants next argue that, since at least May 22, 2020, they have paid delivery drivers sufficient overtime, so Plaintiffs have failed to identify an unlawful policy applied to all drivers.  *Id.* at 10-11.  Finally, Defendants argue that determining whether any particular driver falls within the MCA exemption requires an individualized inquiry—namely, determining the percentage of that driver's activities that included interstate routes—that precludes conditional certification.  *Id.* at 11-16.

Defendants' first argument is unavailing.  They have provided no basis in law for the position that because the drivers' union and Defendants negotiated a collective bargaining

---

[4] Although Plaintiffs' description of the first class for which they seek certification does not clearly exclude CDL A drivers, *see* Motion at 1 (seeking certification for a class of "[a]ll delivery drivers who operated non-tractor trailer food delivery trucks" out of the Warehouse), they later clarify that they "are excluding the Class A tractor trailer drivers from this motion," *id.* at 3.

agreement, the legal protections of the FLSA no longer apply.  And Defendants' third argument

flies in the face of overwhelming authority in this Circuit.  The necessity of individualized inquiries

does not preclude conditional collective action certification because to find otherwise would

transform the conditional certification analysis into a merits inquiry.  *See, e.g.*, *Mason v. Lumber*

*Liquidators, Inc.*, No. 17 Civ. 4780 (MKB) (RLM), 2019 WL 2088609, at *11 (E.D.N.Y. May 13,

2019) (stating that "courts have often held that the potential need for individualized inquiries does

not preclude conditional certification at the first stage of the judicial inquiry" and collecting cases),

*aff'd*, No. 17 Civ. 4780 (MKB) (RLM), 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019);

*Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 647-48 (S.D.N.Y. 2010) ("It is not

necessary, therefore, for plaintiffs to defend against arguments that individualized inquiries may

predominate or that an FLSA exemption covers the plaintiffs at this [first] stage.  These arguments,

rather, are left to the second stage."; collecting cases).  Defendants attempt to distance themselves

from this caselaw by arguing that here, "the individualized inquiry necessary is not simply a matter

of whether job duties differ across the employees in the same positions, but rather whether the

putative collective regularly, or at all or most times, drove across state lines outside of New York

state, as opposed to rarely or never driving interstate routes."  Opposition at 14 (citations omitted).

That is a distinction without a difference; where the drivers were required to drive was part of their

job duties.  Defendants' first and third arguments fail to establish a basis to deny Plaintiffs' motion.

Defendants' second argument—that they have paid their drivers sufficient overtime since

at least May 22, 2020—also strays too close to inviting a merits determination.  Before the Court

is the CBA that was in place between TCW and the drivers' union for the period of August 3,

2014, through August 3, 2017 (the "2014-2017 CBA"), Motion, Exh. 8 at 2-21; the CBA between

those same two parties for the period of August 4, 2017, through August 3, 2020 (the "2017-2020

CBA"), *id.* at 22-40; the current CBA between Dairyland (rather than TCW) and the drivers' union, which went into effect on August 4, 2020, and remains effective through August 4, 2025 (the "Current CBA"), *id.* at 41-59; pay stubs for twelve Plaintiff drivers, *see* Dkt. 162 ("Vazquez-Cain Decl."), Exhs. 1-12; and a letter from the drivers' union on August 4, 2020, which appears to memorialize a modification to the 2017-2020 CBA that went into effect on May 22, 2020 (the "August 4, 2020 Letter"), Dkt. 163-4. This evidence paints a rather complicated picture.

The union's August 4, 2020 Letter stated that, as of May 22, 2020, TCW "chang[ed] the overtime premium threshold from 43 hours to 40 hours and increased the overtime rate from $12 per every hour worked over 43 hours to 1.5 x the employee's regular hourly rate for any hours worked over 40 in a workweek." *Id.* However, the Current CBA, which went into effect on August 4, 2020, contemplates a different method of paying overtime. The Current CBA provides that Dairyland drivers who work over forty hours in their regularly scheduled five-day work week will receive the greater of either $25 per hour or 1.5 times the state minimum hourly rate for each hour worked over forty hours. Motion, Exh. 8 at 51. Put differently, unlike the overtime pay method reflected in the August 4, 2020 Letter, the Current CBA does not necessarily tie the overtime pay of Defendants' drivers to their regular rate of pay, as required under by the FLSA absent an exemption. *See* 29 U.S.C. § 207(a)(1) (requiring overtime pay "at a rate not less than one and one-half times the regular rate at which [the employee] is employed"). And the paystubs for the twelve Plaintiff drivers submitted by Defendants reflect that those drivers largely have been paid in accordance with the August 4, 2020 Letter since May 2020, as those paystubs appear to reflect by and large overtime payments at 1.5 times the drivers' regular rates of pay. Vazquez-Cain Decl., Exhs. 1-12. It therefore appears that, at least for these twelve drivers, Defendants treated the August 4, 2020 Letter as a modification to both the 2017-2020 CBA and the Current CBA. The

combination of this evidence thus could be read to suggest that, at least since May 22, 2020, Defendants have been paying overtime in accordance with the FLSA and have not classified the drivers as FLSA-exempt employees.  But "at this procedural stage, the court does not decide substantive issues going to the ultimate merits."  *Wood v. Mike Bloomberg 2020, Inc.*, 484 F. Supp. 3d 151, 157 (S.D.N.Y. 2020) (cleaned up) (collecting cases); *accord Bethel v. BlueMercury, Inc.*, No. 21 Civ. 2743 (KPF), 2022 WL 3594575, at *6 (S.D.N.Y. Aug. 22, 2022) (rejecting as premature at the conditional certification stage the argument that there was no policy of requiring the employees in question "to work uncompensated overtime hours").  Defendants' second argument therefore also fails because it is too intertwined with the merits of the overtime payment dispute—even though that argument may very well prevail when it becomes appropriate to reach the merits.

The Court must still assess whether "the named plaintiffs [have] ma[de] a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Glatt*, 811 F.3d at 540.  In addition to the evidence already reviewed, Plaintiffs have submitted the following evidence in their effort to make this showing.  First, two of the three named Plaintiffs, Delroy Harriot and Gosnell Butler, submitted declarations under penalty of perjury stating that they: (i) "have been employed by the Defendants since 2011," Dkt. 157-13 ("Harriot Decl.") ¶ 2; Dkt. 157-14 ("Butler Decl.") ¶ 2, (ii) have Class B commercial driver's licenses, Harriot Decl. ¶ 4; Butler Decl. ¶ 4, and (iii) typically work more than forty hours per week and have not been paid 1.5 times their regular wages when working more than forty hours in a workweek, Harriot Decl. ¶¶ 5-6; Butler Decl. ¶¶ 5-6.[5]  Harriot and Butler also attest in their

---

[5] The third named Plaintiff, Mauricio Orbetta, has not submitted a declaration in support of this motion.

declarations that "[a]ll of the Dairyland Delivery Drivers perform the exact same job duties and are paid in the exact same manner as required by the Union contracts."  Harriot Decl. ¶ 17; Butler Decl. ¶ 17.  In further support of this contention, Plaintiffs have submitted a copy of the Driver's Manual for TCW, dated January 1, 2023, which purports to set forth the "typical job duties and responsibilities" for "Chefs' Warehouse Drivers but is not all inclusive."  Motion, Exh. 7 at 2. Based on this evidence, Plaintiffs argue that Defendants had and have a uniform policy of classifying drivers as exempt from the FLSA under the MCA and current Plaintiffs and potential opt-in plaintiffs are similarly situated in their compensation and job duties.

Unlike a typical case, Defendants do not appear to have had concrete policies regarding the classification of the delivery drivers as exempt.  *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 370 (S.D.N.Y. 2007) ("Courts typically authorize dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employers' practice of 'misclassifying.'"); *cf. Pippins v. KPMG LLP*, No. 11 Civ. 377 (CM), 2012 WL 19379, at *10 (S.D.N.Y. Jan. 3, 2012) (finding conditional certification appropriate where the defendant "admit[ted] that it uniformly classifie[d] all its Audit Associates as exempt from the overtime requirements of the FLSA").  The CBAs are silent as to whether the drivers are classified as exempt or non-exempt, and Plaintiffs have introduced no evidence on Defendants' classification policies. And at oral argument Defendants' counsel appeared to represent the absence of any *ex-ante* determination regarding the drivers' classification, stating that the MCA exemption remained available to Defendants *as a fall back defense* if it is determined that they failed to pay adequate overtime to any of the drivers.  6/20/24 Tr. at 23:22-24:4.

The Court nonetheless can cobble together an understanding of Defendants' *de facto* policies based on the evidence presented.  As noted above, the paystubs and August 4, 2020 Letter

11

suggest that, at least since May 22, 2020, Defendants were not treating those drivers as exempt from the FLSA's overtime provisions by virtue of the MCA.  The parties seem to agree that, prior to May 22, 2020, Defendants were paying their drivers in accordance with the then in-effect CBAs, which facially do not provide for time and a half the regular rate of pay for employees that work over forty hours in a week, as is required under the FLSA.  *See* Motion, Exh. 8 at 11-13 (pay provisions of the 2014-2017 CBA), 32 (overtime pay provision of the 2017-2020 CBA); *see also* Dkt. 157-15 ¶¶ 2, 10 (declaration from the drivers' union representative from August 2013 through May 2020, stating: "At no point in [his] time . . . as a union representative for the [drivers] has [sic] the Defendants ever paid a delivery driver 1.5x the regular wage rate when a Chef's Warehouse driver worked over 40 hours in a workweek.").  Prior to May 22, 2020, therefore, it appears that Defendants were *de facto* considering the drivers as exempt.  In effect, the evidence suggests that there were two common schemes or plans: a pre-May 22, 2020 policy of considering the drivers exempt under the MCA and a May 22, 2020 onward policy of not considering them exempt.

Yet, the presence of two different common policies does not undermine the conclusion that the named Plaintiffs are similarly situated to potential opt-in plaintiffs.  Two of the three named Plaintiffs, Harriot and Butler, worked as delivery drivers since 2011.  *See* Harriot Decl. ¶ 2; Butler Decl. ¶ 2.[6]  They were therefore subject to both policies, as potential opt-in plaintiffs would have been as well.  Thus, Harriot and Butler are similarly situated to potential opt-in plaintiffs in that

---

[6] The third named Plaintiff, Orbetta, allegedly "ceased working for Defendants on or around May 6, 2020."  Am. Compl. ¶ 39.

they all appear to have been subject to common policies that were in effect during the relevant time frame.[7]

Plaintiffs also have established that the named Plaintiffs—who are CDL B drivers—are similarly situated to potential opt-in plaintiffs who also worked as CDL B drivers with respect to their job requirements and terms of compensation.  The Driver's Manual, submitted by Plaintiffs, Motion, Exh. 7, largely establishes that all TCW drivers have similar job responsibilities.  *See Pippins*, 2012 WL 19379, at *9 (finding that the plaintiffs carried their burden to establish similarity in job duties and requirements where the defendant's job description for the position in question was identical across offices).  Under each of the CBAs, drivers with their CDL B license were paid in the same manner.  Motion, Exh. 8 at 11-13, 30-33, 50-52.  The modifications memorialized in the union's August 4, 2020 Letter also appear to have imposed a uniform change in the overtime pay provisions for all drivers.  *See* Dkt. 163-4.

But Plaintiffs have not established that the named Plaintiffs are similarly situated to Non-CDL drivers.  Under each of the CBAs, CDL B drivers and Non-CDL drivers were subject to different pay provisions.  *See* Motion, Exh. 8 at 11-13, 30-33, 50-52.  For example, Section 10.2 of the Current CBA dictates the regular rate of pay for CDL drivers, while Section 10.3 dictates the regular rate of pay for Non-CDL drivers.  Motion, Exh. 8 at 50-51.  Under those provisions,

---

[7] To be sure, the apparent existence of two different policies regarding the drivers' classification suggests differences may exist within the overall class of opt-ins.  For example, a driver that worked only prior to May 22, 2020, would appear to have been subject to a different classification policy than a driver that worked only since May 22, 2020.  But the Court's task at this stage is to assess whether the *named Plaintiffs* are similarly situated to potential opt-ins plaintiffs.  *Cf. Scott*, 954 F.3d at 516 (stating that, at step two of the FLSA certification process, "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation"); *Tueros v. Urb. Health Plan, Inc.*, No. 21 Civ. 4525 (JMF) (RWL), 2022 WL 2752070, at *7 (S.D.N.Y. July 14, 2022) (applying the *Scott* standard at the first step of the certification process).

the hourly rate for CDL drivers begins at $19.65, and incrementally increases based on length of employment, capping at $37.80. *Id*. at 50. Meanwhile, the hourly rate for Non-CDL drivers begins at $15.00 and incrementally increases to $16.50 after the employee amasses two years on the job. *Id.* at 51. There also is a significant difference in the scope of the routes driven by Non-CDL and CDL B drivers. As noted above, Non-CDL drivers may only conduct local deliveries, whereas CDL-B drivers can cover the entire Northeastern United States. *Orbetta*, 2023 WL 6386921, at *2. Thus, CDL B drivers are not similarly situated to non-CDL drivers. Moreover, based on the allegations and the evidence presented, the named Plaintiffs only have operated as CDL B drivers. According to their declarations, Harriot and Butler both have CDL B driver's licenses. *See* Harriot Decl. ¶ 4; Butler Decl. ¶ 4. Plaintiffs have not submitted any evidence of the driver's license status of the other named Plaintiff, Orbetta, and the Amended Complaint does not allege his status either.[8]

Accordingly, the Court concludes that the named Plaintiffs are similarly situated to other CBL B drivers who worked as delivery drivers out of the Warehouse, but does not find that they are similarly situated to Non-CDL delivery drivers. *See Tueros*, 2022 WL 2752070, at *8 ("A plaintiff's factual allegations sometimes may be sufficient with respect to only a subset of employees within the proposed collective."). The Court will therefore permit notice to be distributed to those who worked out of the Warehouse as CDL B drivers. To determine the appropriate set of recipients to receive that notice, the Court turns to Plaintiffs' arguments for equitable tolling of the FLSA's statute of limitations.

---

[8] Plaintiffs do contend in their moving brief that Orbetta is a former CDL-B driver who "also worked as a non-CDL driver before obtaining his commercial license." Motion at 3. But a court cannot rely on statements made by attorneys in briefing as evidence or otherwise as a substitute for allegations in a complaint. *See Myers*, 624 F.3d at 555 (stating that plaintiffs cannot rely on "unsupported assertions").

B.      **Equitable Tolling**

As noted, Plaintiffs seek to send notice, under 29 U.S.C. § 216(b), to certain delivery drivers who operated out of the Warehouse "at any time between October 27, 2017 and the date of final judgment in this matter."   Motion at 1.   This request would entail tolling the statute of limitations back to the date this lawsuit was initiated.

An action under the FLSA normally must be commenced "within two years after the cause of action accrued," although "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."   29 U.S.C. § 255(a); *accord Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021).   Because Plaintiffs have alleged willful overtime pay violations, Am. Compl. ¶¶ 3, 91, 104, 106, the Court assumes for purposes of the instant motion that the three-year statute of limitations applies to the claims subject to collective action certification.   *See Watterson*, 2022 WL 3867755, at *8.   A three-year statute of limitations normally would limit any opt-in plaintiff to presenting claims that accrued within three years of them opting into this action.   *See Hoffman*, 982 F. Supp. at 260 ("[O]nly by 'opting in' will the statute of limitations on potential plaintiffs' claims [under the FLSA] be tolled." (citation omitted)).

Given the obvious obstacle here for prospective opt-in plaintiffs—as today is July 12, 2024, and Plaintiffs seek to bring opt-in plaintiffs with claims accruing as far back as October 27, 2017— Plaintiffs ask this Court to equitably toll the statute of limitations for any current and potential future opt-in plaintiffs starting as of October 27, 2020, the date when the original Complaint was filed, *see* Dkt. 1.   *See* Motion at 6-8.   If such tolling were granted, opt-in plaintiffs could timely pursue claims arising from conduct going back to October 27, 2017.   Defendants argue, *inter alia*,

that Plaintiffs have not demonstrated that extraordinary circumstances prevented them from pursuing their FLSA rights earlier.  Opposition at 16-19; *see* 6/20/24 Tr. at 7:17-8:16.

While courts may, in their discretion, "equitably toll the limitations period in appropriate cases in order 'to avoid inequitable circumstances,'" *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (quoting *Yahraes v. Rest. Assocs. Event Corp.*, No. 10 Civ. 935 (SLT), 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011)), such "equitable tolling is only appropriate in rare and exceptional circumstances," *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks and alterations omitted).  In deciding whether to toll a statute of limitations to avoid such inequitable circumstances, courts consider "whether the circumstances are extraordinary enough to warrant equitable relief." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014).  This entails applying a two-part test that assesses "whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80-81 (internal quotation marks omitted).

### 1.  Extraordinary Circumstances

The Court first addresses whether Plaintiffs have established sufficiently extraordinary circumstances to justify equitable tolling.

Courts in this Circuit have found that "litigation delays" beyond the control of the person seeking equitable tolling may, if sufficiently lengthy, qualify as extraordinary circumstances.  *See Watterson*, 2022 WL 3867755, at *9 (collecting cases).  Thus, courts have "tolled the FLSA statute of limitations in cases where 'courts' heavy dockets and understandable delays in rulings' could time bar opt-in plaintiffs 'whose putative class representatives and their counsel are diligently and timely pursuing the[ir] claims.'" *Tueros*, 2022 WL 2752070, at *17 (quoting *McGlone*, 867 F.

Supp. 2d at 444-45) (alteration in *Tueros*); *accord McGlone*, 867 F. Supp. 2d at 445 ("While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delay in rulings.").  Here, the Court determines that some degree of equitable tolling is warranted, though not to the extent Plaintiffs seek.

Plaintiffs argue that the statute of limitations period should be tolled retroactively as of October 27, 2020, but they do not even attempt to offer any argument for tolling prior to June 2021.[9]  The initial Complaint in this action was filed on October 27, 2020.  Plaintiffs could have sought conditional collective action certification at that point or shortly thereafter—and, indeed, all but two of the fifty-two opt-in plaintiffs joined this case between November 2020, and January 2021, *see* Dkts. 6-40, 43-45, 48-61—but they did not.  Then, in June 2021, the parties submitted a letter in which they proposed to "bifurcate discovery by first permitting the parties to resolve" the issue of whether the MCA exemption applies to the FLSA overtime claims in this case.  Dkt. 88 at 2; *accord id.* at 3 ("[T]he [p]arties would like to conduct all necessary discovery to resolve the motor carrier act exemption issue and conduct dispositive motion practice on that aspect of the lawsuit, and depending on the outcome, determine how to proceed from there.").  The Court granted the parties' request and limited *discovery* to only those matters pertaining to the application of the MCA exemption.  *See* Dkt. 94 (post-conference order stating: "At the June 22, 2021 conference, the parties stipulated to limited *discovery* on whether the Motor Carrier Act bars Plaintiffs' claims." (emphasis added)); Dkt. 96 ¶ 17 (case management plan and scheduling order

---

[9] When questioned at oral argument regarding Plaintiffs' request for tolling to the date of the filing of the original Complaint, Plaintiffs' counsel was unable to cite any case in support of such an extreme tolling determination.  *See* 6/20/24 Tr. at 7:2-12.

stating: "This *discovery* schedule is solely related to information concerning the application of the Motor Carrier Act.  Upon completion, the parties agree to stay further *discovery* until any contemplated motion practice is completed." (emphases added)).  Importantly, the Court never ordered that collective action certification motion practice be put on hold pending that discovery. Nothing prevented Plaintiffs from seeking a determination on conditional collective action certification while discovery on the MCA exemption was being conducted.  Indeed, a motion was filed as that limited discovery was ongoing: on July 6, 2021, Defendants moved to disqualify Plaintiffs' counsel, Dkt. 89, which the Court denied on January 14, 2022, Dkt. 102.  Thus, there is no basis to apply equitable tolling to the period of the limited discovery on the MCA exemption. *See Katz v. Equinox Holdings, Inc.*, No. 20 Civ. 9856 (VEC), 2022 WL 2952143, at *3 (S.D.N.Y. July 26, 2022) (declining to apply equitable tolling where the "[p]laintiff was not, at any point, precluded from making a motion for conditional certification," and noting that she should have filed such a motion "if she anticipated that there were potential opt-in plaintiffs whose claims were in danger of being time-barred").

The first point where there was a basis for tolling occurred in the course of the parties' briefing on their cross-motions for partial summary judgment.  On November 18, 2022, Defendants moved for partial summary judgment.  Dkts. 122-23, 124.  On January 4, 2023, Plaintiffs opposed that motion and cross-moved for partial summary judgment, seeking a ruling that, as a matter of law, the MCA exemption did not preclude their claims for unpaid overtime under the FLSA.  Dkts. 131-132.  In that opposition and cross-motion, Plaintiffs also requested leave to move for collective action certification under the FLSA and to seek class action certification as to their New York state law claims.  Dkt. 132 at 2.  On February 28, 2023, Defendants opposed Plaintiffs' cross-motion, Dkt. 146, and replied to Plaintiffs' opposition to

Defendants' motion, Dkt. 143.   And on March 14, 2023, Plaintiffs replied to Defendants' opposition to Plaintiffs' cross-motion.   Dkt. 147.   On September 30, 2023, the Court denied without prejudice Plaintiffs' request to move for conditional certification and class action certification, observing that Plaintiffs "devoted no substantive part of their briefing to justify those requests" and further noting the existence of outstanding issues concerning standing relating to certain of Plaintiffs' state law claims.  *Orbetta*, 2023 WL 6386921, at *17.  Then, after a conference with the parties on October 20, 2023, the Court granted Plaintiffs permission to move for collective action certification.   Plaintiffs filed that motion on November 28, 2023.  Dkt. 157.  Given that Plaintiffs requested permission to file their collective action certification motion on January 4, 2023, and the Court directed Plaintiffs not to file that motion until a later date, the Court finds it appropriate to commence tolling on January 4, 2023.

### 2.      Reasonable Diligence

In addition to demonstrating extraordinary circumstances, Plaintiffs must also show their exercise of reasonable diligence.   Judges in this Circuit have diverged on whether, in the context of FLSA collective action certification, the reasonable diligence inquiry should focus on the named plaintiffs' diligence or the potential opt-in plaintiffs' diligence.  *See Jimenez v. S.O.S. Maint. Inc.*, No. 23 Civ. 1177 (GRB) (JMW), 2023 WL 4054521, at *8 (E.D.N.Y. June 16, 2023) (citing *Watterson*, 2022 WL 3867755, at *9).  In seeking to justify tolling here, Plaintiffs have not argued any diligence by potential opt-in plaintiffs, instead relying exclusively on their own purported diligence.

The Court finds that Plaintiffs' conduct constituted reasonable diligence as of January 4, 2023, when they sought leave to certify a collective action.  As of that date, Plaintiffs diligently sought Court authorization to distribute notice of this suit to potential opt-in plaintiffs through the litigation efforts described above.  *See Flood v. Carlson Rest. Inc.*, No. 14 Civ. 2740 (AT), 2015

WL 260436 (S.D.N.Y. Jan. 20, 2015) ("Here, in light of Plaintiffs' diligence in pursuing the FLSA claims on behalf of putative opt-ins, as well as to avoid any prejudice to potential plaintiffs, equitable tolling is warranted.").  Furthermore, unlike in cases where courts have declined to find that plaintiffs met their reasonable diligence burden, Plaintiffs here have supplied in support of their motion "specific details regarding" potential opt-in plaintiffs who might wish to join the collective "but who are or may become time-barred."  *Watterson*, 2022 WL 3867755, at *9 (citing *Katz*, 2022 WL 2952143, at *3).  These specific details come in the form of the membership roster for the drivers' union, with the names of all members, their hire dates, and their driver category (*i.e.*, CDL A, CDL B, or non-CDL).  *See* Motion, Exh. 9.  Accordingly, the Court finds that Plaintiffs have demonstrated reasonable diligence as of January 4, 2023.

* * *

As Plaintiffs have satisfied both prongs of the equitable tolling inquiry, the Court grants equitable tolling starting from January 4, 2023, the date Plaintiffs first requested permission to move for collective action certification.  Thus, claims that accrued on or after January 4, 2020, would be timely, assuming that the three-year statute of limitations for willful FLSA violations applies.  To be sure, the Court only has assumed for purposes of this motion that the extended FLSA statute of limitations applies to the federal overtime claims.  *See supra* II.B.[10]  As Plaintiffs have alleged violations of the FLSA up through the filing of the Amended Complaint, *i.e.*, February 2, 2021, *see* Am. Compl. ¶ 14, presumptively non-time-barred claims exist for potential

---

[10] The Court does not rule out the possibility of equitable tolling for claims that accrued before January 4, 2020, based on the particular circumstances of an individual opt-in plaintiff.  As multiple other courts have held, it is not appropriate to definitively prohibit tolling for such a class of people because the test for tolling requires an inquiry into whether the individual seeking tolling has diligently sought to exercise their rights.  *See Watterson*, 2022 WL 3867755, at *9 (collecting cases).  The Court therefore will permit future applications for equitable tolling on a plaintiff-by-plaintiff basis.

opt-in plaintiffs who worked as CDL B drivers operating out of the Warehouse and whose claims accrued between January 4, 2020, and February 2, 2021.

## C.    Notice and Associated Discovery

Having determined that conditional collective action certification is appropriate, the next question considers the form of the notice to be distributed to potential opt-in plaintiffs.  "The FLSA does not specify the contents of the notice of pending litigation to be provided to potential opt-in plaintiffs.  Instead, it vests the Court with broad discretion to fashion said notice." *Gillett v. Zara USA, Inc.*, No. 20 Civ. 3734 (KPF), 2021 WL 1731836, at *7 (S.D.N.Y. May 3, 2021).  In assessing the adequacy of a proposed notice, courts consider whether the notice provides "accurate and timely notice concerning the pendency of the collective action, so that potential opt-in plaintiffs can make informed decisions about whether to participate." *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 170) (alteration notation omitted).  Notices typically include "a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries." *Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19 Civ. 7332 (PAE) (BCM), 2021 WL 148751, at *12 (S.D.N.Y. Jan. 15, 2021).

Defendants raise several objections to Plaintiffs' proposed notice.  First, Defendants object that Plaintiffs propose to distribute the notice to drivers who worked from October 27, 2017, to the present.  Opposition at 20-21.  Second, they take issue with Plaintiffs' proposed opt-in period of ninety days.  *Id.* at 21.  Third, they advance multiple objections to the content of Plaintiffs'

proposed notice, and request that the Court order the parties to meet and confer on these issues. *Id.* at 21-23.  Fourth, they contest Plaintiffs' request to be granted permission to post the notice in the Warehouse.  *Id.* at 23.  The Court considers each issue in turn.

### 1.  Notice Period

Defendants' first two objections bear on the notice period and may be addressed quickly. Given the above analysis, *see supra* III.B, the notice should only be directed to those individuals employed as drivers between January 4, 2020, and February 2, 2021.  It would not serve the efficiency interests of the collective action mechanism to distribute notice to individuals whose claims are likely time-barred, and Plaintiffs "have not shown that there is a realistic possibility that any individuals whose employment fell outside the limitations period will be able to demonstrate equitable tolling."  *Contrera v. Langer*, 278 F. Supp. 3d 702, 726-28 (S.D.N.Y. 2017).  In addition, for the reasons discussed above in the Court's similarly-situated analysis, *see supra* III.A.2, notice should only be directed to drivers who had their CDL B driver's licenses during the aforementioned time frame.

As to the opt-in period, the Court finds that sixty days is appropriate.  Although Plaintiffs request a ninety-day opt-in period, "[t]he standard opt-in period in this Circuit, following conditional certification, is 60 days."  *Ni v. HSBC Bank USA, N.A.*, No. 23 Civ. 309 (AS) (KHP), 2024 WL 323284, at *8 (S.D.N.Y. Jan. 29, 2024).  "To extend the notice period beyond the typical 60-day timeframe, Plaintiff[s] needs to show the presence of special circumstances warranting such an extension."  *Id.*  As Plaintiffs have not demonstrated any such special circumstances, the notice should reflect a sixty-day opt-in period.

### 2.  Content of the Notice

Defendants raise several complaints with the proposed notice, none of which Plaintiffs respond to in their Reply.  *See* Reply at 8-9.  The Court largely agrees with Defendants' objections,

but orders the parties to meet and confer with the aim of submitting a joint revised proposed notice consistent with the instructions in this Opinion and Order.

Several of Defendants objections are worth discussing now, however, to provide guidance for the parties' meet and confer process.  First, the notice should of course remove the errant references to Chipotle and the Honorable Sarah Netburn.  *See* Motion, Exh. 5 at 3-6.  Second, the notice should inform potential opt-ins "that they may retain their own counsel."  *Gillett*, 2021 WL 1731836, at *8.  The substance under the heading, "Do I have a lawyer in this case?", Motion, Exh. 5 at 4, should clearly reflect this.  Third, the notice should "remind opt-in plaintiffs about their discovery and preservation obligations."  *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20 Civ. 421 (LDH) (MMH), 2021 WL 4502479, at *9 (E.D.N.Y. Sept. 30, 2021); *see also Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 666 (S.D.N.Y. 2017).  Fourth, although Defendants assert that the proposed notice omits their position in this lawsuit, Opposition at 22-23, the notice appears to state Defendants' position.  *See* Motion, Exh. 5 at 3 ("Dairyland denies all of the named Plaintiffs' material allegations and maintains that the named Plaintiffs and Collective Action Members are exempt from the overtime provisions of the FLSA and are not owed any overtime pay under the FLSA, and are also not entitled to liquidated damages, attorneys' fees, and costs.  Dairyland also maintains that its pay practices for its Deliver [sic][11] Drivers at all times fairly and lawfully compensated them for all the time they spent working.").  In conferring on a proposed notice, the parties should ensure that this statement accurately reflects Defendants' position.  Finally, the Court is unpersuaded that the notice and consent form "should inform potential opt-in plaintiffs that they themselves may be responsible for their own legal costs in the lawsuit."  Opposition at 22.  Defendants have provided a single citation that is more than twenty

---

[11] This typographical error too should be corrected in the notice.

years old for this proposition, *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003), and the court there did not address this language with any specific analysis. As this language may intimidate potential opt-in plaintiffs from joining the lawsuit, the Court is not inclined to require its inclusion in the notice.

### 3. Form and Method of Distribution

Defendants do not object to three of Plaintiffs' proposals for the form and method of distribution, which are as follows. First, Plaintiffs propose that notice be distributed both by U.S. mail and email (to both personal and business email addresses). Motion at 15. Second, Plaintiffs propose to send a reminder mailing and email to potential opt-in plaintiffs halfway through the notice period. Motion at 16; *id.*, Exh. 6 (proposed reminder letter). Third, Plaintiffs ask the Court to permit representatives of the delivery drivers' union, IBEW Local Union 1430, and "shop stewards to provide current Dairyland delivery drivers with copies of the notice after work hours inside the Defendants [sic] Bronx facility." Motion at 16. As Defendants do not object to any of these proposals, the Court approves each of them.

Defendants do object, however, to Plaintiffs' request that the Court order Dairyland to post a copy of the notice "in a conspicuous location in its Bronx New York Warehouse for the entire notice period." Motion at 15; *see* Opposition at 23. The Court finds that posting in the workplace is unnecessary because Plaintiffs' counsel, as President of and in-house legal counsel for the drivers' union, *see* Dkt. 157-2 at ¶ 3(i) (declaration from Plaintiffs' counsel), presumably possesses access to the contact information for potential opt-in plaintiffs. In addition, as discussed below, the Court orders Defendants to produce a computer-readable list of the names, last known addresses, telephone numbers, email addresses, work locations, and dates of employment for all CDL B drivers who worked out of the Warehouse between January 4, 2020, and February 2, 2021. Thus, "[i]n light of the fact that there is no suggestion that there will be any problem reaching

[potential opt-ins] through mail or email, the Court finds the posting of the notice [in the Warehouse] unnecessary." *Knox*, 282 F. Supp. 3d at 668.

### 4.    Discovery

Plaintiffs request that the Court order Defendants to produce the full name, address, email, and cell phone numbers of all potential opt-in plaintiffs, as well as "a computer-readable list of all Delivery Driver names, last known addresses, telephone numbers, [] email addresses, work locations, and dates of employment for all persons employed by Defendant [sic] as Delivery Drivers at the Dairyland Bronx Facility from October 20, 2017 to the present." Motion at 15, 17. Defendants do not object to these requests. *See* Opposition at 20-24. The Court will therefore order the production of the requested computer-readable list, with one modification: given the tolling and notice period approved in this Opinion and Order, as well as the scope of the drivers in the collective action certified, Defendants need only produce the requested information for persons who worked as CDL B drivers out of the Warehouse between January 4, 2020, and February 2, 2021.

In addition, Plaintiffs ask the Court to order Defendants to provide social security numbers for all potential opt-in plaintiffs for whom a notice is returned undeliverable by U.S. mail. Motion at 18. Although Defendants do not object to this request, the Court finds the request premature. In line with the weight of authority in this Circuit, the Court will not order the production of social security numbers at this time. *Wilk v. Quality Installations of NY, Inc.*, No. 23 Civ. 6945 (JAM), 2024 WL 1169024 (E.D.N.Y. Mar. 19, 2024) (declining to order the production of social security numbers at the conditional certification stage given the privacy concerns associated with such information and collecting cases doing the same); *Gillett*, 2021 WL 1731836, at *9 ("[T]he Court believes the greater weight of authority goes against authorizing the collection of [social security numbers] in the first instance and without a showing that the information is necessary." (internal

quotation marks omitted)).  Plaintiffs may renew their application for the disclosure of social security numbers if they are unable to distribute notice using the information produced by Defendants.

### III.  Conclusion

For the reasons stated above, Plaintiffs' motion is granted in part.  The Court grants Plaintiffs' motion for conditional collective action certification but does not permit the full extent of equitable tolling sought by Plaintiffs.  The Court permits as presumptively non-time-barred opt-in claims that accrued between January 4, 2020, and February 2, 2021.  In addition, the Court authorizes the sending of notice to only CDL B drivers who worked out of the Warehouse during that time frame (*i.e.*, January 4, 2020, to February 2, 2021).

As discussed above, the parties are ordered to meet and confer regarding a new proposed notice consistent with this Opinion and Order.  The parties shall submit the new proposed notice within two weeks of this Opinion and Order.  Defendants are further ordered to provide Plaintiffs with a computer-readable list of names, last known addresses, telephone numbers, email addresses, work locations, and dates of employment for all persons that worked as CDL B drivers out of the Warehouse between January 4, 2020, and February 2, 2021.

The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 157.

SO ORDERED.

Dated: July 12, 2024
      New York, New York

_____
JOHN P. CRONAN
United States District Judge